## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**AUBRIE SPINKA**

**Plaintiff**

**v.**

**E.H., a minor, STEPHEN HAUSER,**
**TARA HAUSER, JESSICA DRAKE,**
**BENJAMIN HOWES, FREEBURG**
**COMMUNITY HIGH SCHOOL DISTRICT**
**NO. 77, O'FALLON TOWNSHIP HIGH**
**SCHOOL DISTRICT NO. 203**

**Defendants.**                              **Case No. 14-cv-583-DRH-PMF**

**and**

**ILLINOIS HIGH SCHOOL**
**ASSOCIATION, respondent in**
**discovery.**

### MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I.    INTRODUCTION

Now before the Court are defendants O'Fallon Township High School District No. 203 (hereinafter "District 203") motion to dismiss Counts XI (Doc. 50), to which plaintiff timely filed a response (Doc. 60);  Freeburg Community High School District No. 77's (hereinafter "District 77") motion to dismiss Counts XII and XVI (Docs. 55), to which plaintiff timely filed a response (Doc. 63); Benjamin Howes' motion to dismiss Counts X and XV (Doc. 56), to which plaintiff timely filed a response (Doc. 64); and Jessica Drake's motion to dismiss Counts IX of plaintiff's

first amended complaint (Doc. 57), to which plaintiff also timely responded (Doc. 65). Naturally, plaintiff argues that each claim comport with the pleading requirements and state a claim upon which relief can be granted in its responses to each of the aforementioned motions. For the reasons set forth below, the Court **GRANTS** District 203's motion to dismiss, **GRANTS** the District 77's motion to dismiss, **GRANTS in part** Benjamin Howes' motion to dismiss, and **GRANTS** Jessica Drake's motions to dismiss while allowing plaintiff leave to amend her claims, if so desired.

## II.    BACKGROUND

Plaintiff's sixteen count complaint arises from an incident that took place on April 13, 2013, in which the plaintiff, a student of District 77, was sexually attacked by fellow District 77 student defendant E.H. in the girls' bathroom of District 203 during a regional music event hosted by District 203. After the attack, plaintiff alleges that she was prohibited by District 77 principal Benjamin Howes from attending events on campus, while E.H. was allowed to continue attending school.

At issue here are the plaintiff's claims of willful and wanton supervision against the two school districts for their failure to take measures to prevent the attack on the plaintiff from occurring. The plaintiff claims that, as a result of such a failure, she has been displaced from District 77 facilities and has suffered injury and incurred damages. Also at issue are plaintiff's claims against Benjamin Howes and District 77 on the basis that her treatment, subsequent to the attack, constituted sex-based discrimination in violation of her Fourteenth Amendment right to Equal

Protection. The plaintiff claims that, as a result of her displacement from District 77, she has suffered injury and incurred damages.

As to Counts XI and XII, both school districts argue that plaintiff has pled insufficient facts to support a duty on their behalf and the common-law "public duty rule" bars them from owing any duty to the individual plaintiff. The plaintiff counters by claiming that she has adequately pled the existence of a duty and that the "public duty rule" does not apply in this case (Docs. 60, 63). The plaintiff further argues that, even if the rule is applicable here, she was owed a "special duty" as an exception to the public duty rule (Doc. 63). Duty aside, both school districts claim immunity from tort liability under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILL. COMP. STAT 10/1-101 *et seq.* (Docs. 50, 55-1). The plaintiff argues that her willful and wanton claim is sufficiently pled such that the Tort Immunity Act does not protect the defendants for their conduct (Docs. 60, 63). Given that the claims and the applicable law for Counts XI and XII are essentially identical, the Court will consider both counts together.

As to Counts IX and X, both defendants argue that plaintiff has pled insufficient facts to show that either of them engaged in willful and wanton conduct (Docs. 56, 57). Specifically, the defendants contend that the willful and wanton supervision claims against them are untenable because the plaintiff has not adequately established the existence of a duty owed to her pursuant to Illinois law, nor has she pled facts showing the application of a "special duty." Defendants further assert

that they are immunized from tort liability under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILL. COMP. STAT 10/1-101 *et seq.* as well as Section 24-24 of the Illinois School Code, 1-5 ILL. COMP. STAT 5/24-24. The plaintiff counters that her willful and wanton claim is sufficiently pled such that the Tort Immunity Act and the Illinois school code do not protect the defendants for their conduct (Docs. 64, 65). Given that the claims and the applicable law for Counts IX and X are essentially identical, the Court will consider both counts together.

As to Counts XV and XVI, both defendants argue that the plaintiff has pled insufficient facts to show a violation of § 1983. Specifically, the defendants contend that the Equal Protection claims against them are untenable because the plaintiff has merely recited the elements of § 1983 and stated legal conclusions in her amended complaint (Docs. 55-1, 56-1). Given that the claims for Counts XV and XVI are directly related, the Court will address those counts together as well.

### III.   LEGAL STANDARD

Rule 8(a) requires that a complaint provide, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief

that is plausible on its face."

Although federal pleading standards were retooled by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), notice pleading remains all that is required in a complaint. "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citation omitted).

The Seventh Circuit offers further guidance on what a complaint must do to withstand 12(b)(6) dismissal. The Court in *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008), reiterated the standard: "surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the complaint's allegations must "raise a right to relief above the speculative level." A plaintiff's claim "must be plausible on its face," that is, "the complaint must establish a non-negligible probability that the claim is valid." With this in mind, the Court turns to plaintiff's complaint.

## IV.   ANALYSIS

### a. Count XI and XII (Willful and Wanton Supervision Claims)

#### i. *Duty of Care*

Willful and wanton conduct is not considered an independent tort under Illinois law. *Zirko v. Soo Line R.R. Co.*, 161 Ill.2d 267, 274, 204 Ill.Dec. 178, 641 N.E.2d 402, 406 (1994). Rather, it is considered an aggravated form of negligence. *Sparks v. Starks*, 367 Ill.App.3d 834, 837, 305 Ill.Dec. 770, 856 N.E.2d 575, 577 (2006).

As such, a plaintiff seeking to recover for willful and wanton conduct must plead the basic elements of negligence, *Krywin v. Chicago Transit Authority*, 238 Ill.2d 215, 225, 345 Ill.Dec. 1, 938 N.E.2d 440, 446 (2010), plus an additional requirement that the defendant acted with a conscious disregard for the plaintiff's welfare. *Doe v. Chicago Board of Education*, 213 Ill.2d 19, 28, 289 Ill.Dec. 642, 820 N.E.2d 418, 423 (2004). Just as it is an essential element to a negligence claim, the existence of a duty is a prerequisite to any willful and wanton cause of action. *Scarano v. Town of Ela*, 166 Ill.App.3d 184, 187, 117 Ill.Dec. 72, 520 N.E.2d 62, 64 (1988). Thus, survival of a willful and wanton claim depends first and foremost on whether the complaint contains sufficient factual allegations to support a duty that the defendant owed to the plaintiff. See *Brooks v. McLean County Unit Dist. 5*, 2014 IL App (4th), 380 I..Dec. 661, 8 N.E.3d 1203, 1208 (2004).

The question of whether a duty exists is a question of law, *Krywin*, 238 Ill.2d at 225, 345 Ill.Dec. 1, 938 N.E.2d 440 at 447, which defendants FCHS and OTHS argue is answered by the public-duty rule. They claim that the public-duty rule applies in this case, meaning that they owed no duty to protect individuals, such as plaintiff, from harm. Plaintiff naturally disagrees, claiming that her willful and wanton claim falls outside the scope of the public duty rule and, even if the rule applies, the facts alleged support a "special duty" exception to the rule.

### ii.  Public-Duty Rule

Under Illinois law, the public-duty rule protects a governmental entity from

tort liability sought by an injured individual. *Doe-3 v. White*, 409 Ill.App.3d 1087, 1093, 351 Ill.Dec. 396, 951 N.E.2d 216, 223 (2011). The basis for non-liability is that government entities' duty to preserve the community's well-being is owed "to the public at large, rather than to specific members of the community." *Zimmerman v. Village of Skokie*, 183 Ill.2d 30, 32, 231 Ill.Dec. 941, 697 N.E.2d 699, 702 (1998).Illinois courts have applied the public duty rule primarily to "cases involving conduct by policemen, firemen, or other first-responder type personnel," *Brooks v. McLean County Unit Dist.* 8 N.E.3d 1203, 1209 (2014), but in general they have upheld that such parties are not liable in tort for a failure to prevent the tortious or unlawful acts of others. See, e.g., *Santy v. Bresee*, 129 Ill.App.3d 658, 84 Ill.Dec. 853, 473 N.E.2d 69 (1984); *Gardner v. Village of Chicago Ridge*, 71 Ill.App.2d 373, 219 N.E.2d 147 (1966); *Adamczyk v. Zambelli*, 25 Ill.App.2d 121, 166 N.E.2d 93) (1960).

The public-duty rule has been applied to school districts in cases where a school's alleged failure to implement police-like protective measures resulted in the plaintiffs' deaths. *Thames v. Board of Education*, 269 Ill.App.3d 210, 206 Ill.Dec. 440, 645 N.E.2d 445 (1994); *Lawson v. City of Chicago*, 278 Ill.App.3d 628, 215 Ill.Dec. 237, 662 N.E.2d 1377 (1996).   While those cases established the applicability of the rule to a school district, the question of whether it is implicated in a school context is still determined by the nature of the alleged conduct.   See *Doe–3 v. McLean County Unit District No. 5 Board of Directors*, 484, 973 N.E.2d 880, 893 (refusing to apply the public-duty rule where the "plaintiffs [did] not allege

defendants failed to protect them or that they owed any affirmative duty to do so").

Unlike allegations of a failure to provide police-like protection, allegations of a mere failure to supervise or to enforce existing policies do not implicate the public duty rule. *Brooks*, 2014 IL App (4th) 130503, 380 Ill.Dec. 661, 8 N.E.3d at 1209 (finding the public duty rule inapplicable where "the complaint allege[d] [the defendant's] failure to supervise students, educate them on the danger [of their conduct], and enforce existing policies"). Here, the plaintiff's willful and wanton supervision claims include allegations against District 77 and District 203 which do not invoke the public duty rule. The plaintiff's complaint alleges a failure to implement and/or enforce policies, failure to staff adequately, failure to instruct students, and failure to inform or train personnel and staff (Doc. 48). The substance of the complaint does not aver that the defendants failed to provide police-like protections, such that the public duty rule would operate to bar the defendants' liability. Since the public duty rule does not apply, it is unnecessary to decide whether the "special duty" exception is invoked in this case. Rather, the Court must turn to a traditional duty analysis to determine whether the pleadings contain sufficient facts to show the existence of a duty.

### iii.  *Traditional Duty Analysis*

Under the traditional duty analysis, four factors are relevant to whether a duty exists: (1) the reasonable foreseeability of the plaintiff's injury, (2) the reasonable likelihood of the injury, (3) the magnitude of the defendant's burden of guarding against the injury, and (4) the consequences of placing that burden on the

defendant. *LaFever v. Kemlite Co.*, 185 Ill.2d 380, 388, 235 Ill.Dec. 886, 706 N.E.2d 441, 446 (1998).

As to the first foreseeability prong, the plaintiff's complaint alleges that District 77 officials had notice that defendant E.H. was a threat to fellow students. (Doc. 48). It is debatable whether this single allegation is sufficient to create an inference of foreseeability on behalf of defendants under the first prong of the above test. Furthermore, complaints against E.H. were only lodged in District 77, not District 203. Therefore, plaintiff failed to plead against District 203 to support foreseeability.

The facts are similarly scant to support the second 'likelihood of injury' prong as against District 77, and especially District 203. With regard to the third and fourth prongs, the complaint is not responsive to these elements. Thus, the Court cannot conduct an adequate traditional analysis of whether defendant's in fact owed the plaintiff any duty to prevent the harm allegedly suffered. Despite the fact that a traditional duty has been inadequately pled, the Court will assume for the sake of analysis that a duty was owed so that the defendants' immunity under the Tort Immunity Act may be assessed.

### iv.  Tort Immunity Act

The common-law public-duty rule is codified in the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act), 745 ILL. COMP. STAT 10/1-101 *et seq. Lawson v. City of Chicago*, 278 Ill.App.3d 628, 215 Ill.Dec. 237, 662 N.E.2d 1377, 1382 (1996). The Tort Immunity Act provides that a

local public entity is not liable for an injury caused by a failure to supervise an activity on or the use of any public property, unless it is guilty of willful and wanton conduct that proximately causes the injury. 745 ILL. COMP. STAT 10/3–108(a). The Act also affirms that a local public entity is not liable for failure to provide police protection service or, if police protection service is provided, for failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. 745 ILL. COMP. STAT 10/4–102. A "local public entity," as defined under the Act, includes school districts and all other local governmental bodies. ILL. COMP. STAT 10/1-206.

The provision at issue in this case is section 3-108(a), since the Court has determined that Counts XI and XII are related to supervision and not a failure to provide a police protective service. Thus, in order to defeat the defendant school districts' immunity, plaintiff's complaint must properly allege willful and wanton conduct, on the part of the school districts, as the proximate cause of Spinka's injury.

The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILL. COMP. STAT 10/1–210. "When the plaintiff is alleging that the defendant engaged in willful and wanton conduct, such conduct must be shown through well-pled facts, and not by merely labelling the conduct willful and wanton." *Winfrey v. Chicago Park District*, 274 Ill.App.3d 939, 943,

211 Ill.Dec. 46, 654 N.E.2d 508, 512 (1995). In order to satisfy the pleading hurdle under *Twombly* and *Iqbal,* the plaintiff's complaint in this case must adequately allege facts showing either a deliberate intention to harm her or utter indifference toward or conscious disregard for her welfare. The plaintiff's complaint does not plead facts establishing a deliberate intention to harm her; therefore, the issue at hand is whether she has established facts sufficient to support an "utter indifference to or conscious disregard for" her safety.

With regard to District 77, the plaintiff's complaint alleges that "District 77 officials had received complaints about defendant E.H.'s violent and aggressive behavior toward fellow students" (Doc. 48) and, knowing the impending danger, it failed to prevent E.H.'s attack on the plaintiff. The plaintiff argues that these allegations are sufficient to survive dismissal, citing *Doe ex rel. Ortega-Piron v. Chicago Board Of Education*, 213 Ill.2d 19, 289 Ill.Dec. 642, 820 N.E.2d 418, 420 (2004), as support. The plaintiff argues that, as in *Doe*, the circumstances pled made the assault foreseeable by the school district such that it was willful and wanton in failing to intervene. However, the plaintiff neglects to acknowledge that the complaint in *Doe* showed that the defendant school board had far more extensive knowledge of the assailant student's deviant history than the complaint at issue.

In *Doe*, the plaintiff pled that the defendant knew the student "had been declared a sexually aggressive child and youth ward and was under a 'Protective Plan' requiring that he never be left unsupervised among other children." *Doe ex*

*rel. Ortega-Piron v. Chicago Bd. Of Educ.*, 213 Ill.2d 19, 22, 289 Ill.Dec. 642, 820 N.E.2d 418, 420. Without more specific facts from which knowledge or propensity can be inferred, the level of foreseeability on the face of the plaintiff's complaint does not rise to the level that it did in *Doe.* Thus, in the Court's view the complaint does not adequately support the plaintiff's Count XII willful and wanton claim against District 77 in order to survive dismissal. *See, e.g., A.R. ex rel. M.R. v. Chicago Bd. of Educ.*, 311 Ill.App.3d 29, 34, 243 Ill.Dec. 697, 724 N.E.2d 6, 11-12 (1999) (overruled on other grounds); Cf. *Davis v. Carmel Clay Schools*, 570 Fed. Appx. 602, 608 (7th Cir. 2014) ("evidence of a repeated pattern or widespread practice . . . can establish deliberate indifference on the part of the School" with regard to a § 1983 claim against it).

As to District 203, the plaintiff pleads no facts that the school district knew of the danger that E.H. allegedly posed to other students. The plaintiff merely alleges that District 203 had knowledge of impending danger. The plaintiff argues in her Memorandum in Opposition to defendant's motion to dismiss that, "[a]t this stage, it is enough that the [c]omplaint raises a reasonable expectation that discovery will reveal evidence supporting this allegation." (Doc. 60). However, that argument is not consistent with *Twombly* and *Iqbal.* Without well-pled allegations of District 203's specific knowledge, the plaintiff's Count XI willful and wanton claim cannot survive dismissal under Rule 8(a).

**b.  Counts XV and XVI (42 U.S.C. § 1983 Claims)**

### *i.  Principal Howes in His Individual Capacity*

To state a claim for personal liability under § 1983, a plaintiff must allege that defendant was personally involved in the deprivation of her constitutional rights. *Stringer v. Rowe,* 616 F.2d 993, 1000-1001 (7th Cir. 1980). "Personal involvement" requires an overt act, or a failure to act "with a deliberate or reckless disregard of plaintiff's constitutional rights." *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994). "Personal involvement" does not demand the defendant's direct participation in the deprivation of the plaintiff's constitutional rights. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). It is enough if the constitutional deprivation occurs at the defendant's direction or with his or her knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) [citations omitted].

Therefore, to advance a § 1983 equal protection claim against a defendant in his individual capacity, a plaintiff must set forth factual allegations showing that the defendant directly and knowingly participated in a constitutional violation or that he recklessly permitted a violation to occur. On the face of the pleading, the plaintiff's claim asserts, in effect, that Principal Howes directly deprived the plaintiff of her Equal Protection rights by prohibiting her from attending events on the District 77 FCHS campus. Without assessing the validity of her constitutional claim, the Court finds that the plaintiff has adequately made a *prima facie* claim to withstand dismissal that Principal Howes directly participated in her alleged constitutional deprivation by banning her from campus based on her sex, which a reasonable government employee would know is a constitutional violation. *See Jacobeit v. Rich Twp. High Sch. Dist. 227*, 673 F. Supp. 2d 653, 664 (N.D. Ill.

2009).

At the pleading stage, a plaintiff need not plead evidence; "a complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *American Nurses' Association v. State of Illinois*, 783 F.2d 716, 727 (7th Cir.1986). Accordingly, her Count XV § 1983 claim against Mr. Howes is sufficient to survive dismissal at this stage.

### ii. District 77

Under *Monell v. Department of Social Services of City of New York*, a school district cannot be held liable under § 1983 based upon a respondeat superior theory. 98 S.Ct. 2018, 2036 (1978). Instead, in order to allege that a school district violated a plaintiff's rights under Section 1983, the plaintiff must satisfy a heightened pleading standard by showing: 1) that there was an express policy that when enforced, caused a constitutional deprivation, 2) that there was a widespread practice that, although not authorized by written law or express policy, was so permanent and well settled as to constitute a custom or usage with the force of law, or 3) the plaintiff's constitutional injury was caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The plaintiff assumes that Principal Howes has "final authority to bar students from his school's campus," (Doc. 63) and therefore District 77 is liable for his conduct under the third *Monell* scenario. Under Section 1983, an individual's status as a final policymaker is a question of state or local law. *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir.2004). "In order to have final policymaking

authority, an official must possess '[r]esponsibility for making law or setting policy,' that is, 'authority to adopt rules for the conduct of government.' " *Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir.2003) (quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir.1992)). The mere authority to implement pre-existing rules is not the authority to set policy. *Id. at 601*; *Auriemma*, 957 F.2d at 401; *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir.1995).

The plaintiff's conclusory presumption that Principal Howes had final policymaking authority is not supported legally or factually on the face of the pleading. The plaintiff does not proffer a state or local law or custom as a source of Principal Howes' alleged authority, nor does she set forth specific facts demonstrating that Principal Howes had the authority to adopt rules for District 77, as distinct from the authority to merely enforce pre-existing rules. Unless and until the plaintiff can point to a local rule or facts to corroborate Principal Howes' policymaking authority, Count XVI of the plaintiff's complaint fails under Rule 8 pleading standards. If the plaintiff cannot adequately plead Principal Howes' final policymaking authority, she can alternatively rely on a different *Monell* scenario— that there was an express policy or a widespread practice that led to her constitutional deprivation. Plaintiff has offered to amend her complaint in this vein (Doc. 63), but until she does so her §1983 claim cannot stand against District 77 under Rule 8(a).

### c.  Counts IX and X (Willful and Wanton Claims)

#### i.  *Illinois School Code Section 24-24*

Section 24-24 of the Illinois School Code provides, in relevant part:

> In all matters relating to the discipline in and conduct of the schools and the school children, [teachers and other certified educational employees] stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program, including all athletic and extracurricular programs, and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians. 105 ILL. COMP. STAT. 5/24-24.

"Since the foregoing statute specifically confers upon educators the status of parent or guardian to the students, and since a parent is not liable for injuries to his child absent willful and wanton misconduct, it therefore follows that the same standard applies as between educator and student." *Tanari v. Sch. Directors of Dist. No. 502, Bureau Cnty.*, 69 Ill. 2d 630, 636, 373 N.E.2d 5, 7 (1977) (citing *Kobylanski v. Chicago Board of Education*, 63 Ill.2d 165, 170, 347 N.E.2d 705, 708 (1976)). As codified in Section 24-24, the *in loco parentis* relationship between educators and students is well established in Illinois such that educators are immune to liability for negligence "if willful and wanton misconduct by the supervising teacher is not pled and proven." *Palmer v. Mount Vernon Twp. High Sch. Dist. 201*, 169 Ill. 2d 551, 562, 662 N.E.2d 1260, 1265 (1996). The *in loco parentis* relationship has been extended to teachers and principals alike. *See Picha v.* Wielgos, 410 F.Supp. 1214, 1217 (N.D. Ill. 1976).

Furthermore, a school district is not subject to liability if the cause of action against the school district is predicated upon the ordinary negligence of a teacher. *Sidwell v. Griggsville Community Unit School District No. 4*, 146 Ill.2d 467, 472–73, 167 Ill.Dec. 1055, 588 N.E.2d 1185, 1188 (1992). Here, the plaintiff contends

that the *in loco parentis* doctrine does not bar her claim against the defendants because her complaint does not allege negligence, but rather willful and wanton supervision. The plaintiff is somewhat mistaken in her distinction, as willful and wanton conduct is not considered an independent tort under Illinois law, *Zirko v. Soo Line R.R. Co.*, 161 Ill.2d 267, 274, 204 Ill.Dec. 178, 641 N.E.2d 402, 406 (1994), but an aggravated form of negligence. *Sparks v. Starks*, 367 Ill.App.3d 834, 837, 305 Ill.Dec. 770, 856 N.E.2d 575, 577 (2006). Thus, the question confronted by the Court is whether the negligence alleged rises to the level of willful and wanton conduct in order to forfeit defendants' immunity.

### ii.  Tort Immunity Act as applied to Drake and Howes

Like Section 24-24, the Tort Immunity Act provides that public employees are not liable for an injury caused by a failure to supervise an activity on or the use of any public property, unless the employees are guilty of willful and wanton conduct which proximately causes the injury. 745 ILL. COMP. STAT 10/3–108(a). The Tort Immunity Act has been applied to individual school teachers and administrators to immunize them from liability. *See Doe v. White,* 409 Ill.App.3d 1087, 1094, 351 Ill.Dec. 396, 951 N.E.2d 216, 224 (2011). In order to defeat the defendants' immunity, the plaintiff's complaint must properly allege willful and wanton conduct on their part which proximately caused her injury.

The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of

others or their property." 745 ILL. COMP. STAT 10/1–210. "When the plaintiff is alleging that the defendant engaged in willful and wanton conduct, such conduct must be shown through well-pled facts, and not by merely labelling the conduct willful and wanton." *Winfrey v. Chicago Park District*, 274 Ill.App.3d 939, 943, 211 Ill.Dec. 46, 654 N.E.2d 508, 512 (1995). In order to satisfy the pleading hurdle under *Twombly* and *Iqbal,* plaintiff's complaint must adequately allege facts showing either a deliberate intention to harm her or utter indifference toward or conscious disregard for her welfare. In this case, the complaint does not plead facts establishing a deliberate intention to harm her; therefore, the issue at hand is whether she has established facts sufficient to support an "utter indifference to or conscious disregard for" her safety.

### iii.  Willful and Wanton Negligence as applied to Drake and Howes

It is well-established in under Illinois law that a teacher's mere act of leaving students unsupervised falls short of willful and wanton misconduct. See *Booker v. Chicago Bd. of Educ.*, 75 Ill.App.3d 381, 386, 31 Ill.Dec. 250, 394 N.E.2d 452, 455 (1979) (granting immunity to a teacher who allegedly "'failed to prevent,' 'failed to protect,' and 'permitted and allowed the plaintiff to enter an area out of sight'" when the teacher allowed the student to enter a bathroom under the supervision of a fellow classmate who the teacher knew had previously threatened her); *Clay v. Chicago Bd. of Educ.*, 22 Ill. App. 3d 437, 439, 318 N.E.2d 153, 155 (1974). (holding that a willful and wanton claim did not exist against a teacher who was absent from the classroom when plaintiff was struck in the face by another student

who the teacher allegedly knew or should have known had a propensity for such violence); *Albers v. Community Consol. No. 204 School*, 155 Ill.App. 1083, 1086-87, 108 Ill.Dec. 675, 508 N.E.2d 1252, 1255 (1987) (holding that a teacher was not willful and wanton in leaving the plaintiff in unsupervised in a classroom where he was injured by another student). "Rather, a plaintiff must show that the teacher or school was aware or should have known that the absence of supervision posed a high probability of serious harm or an unreasonable risk of harm." *Jackson v. Chicago Bd. of Educ.*, 192 Ill.App.3d 1093, 1100, 140 Ill.Dec. 178, 549 N.E.2d 829, 833 (1989) [citations omitted].

The defendants cite *Mancha v. Field Museum of Natural History*, 5 Ill.App.3d 699, 283 N.E.2d 899 (1972), to support their proposition that, as a policy matter, teachers cannot be expected to provide constant supervision of each and every student. Plaintiff attempts to distinguish *Mancha* on the basis that it "did not concern a situation in which the school officials knew or should have known about the dangers and risks posed by a specific student on the field trip;" rather, plaintiff contends that the case turned on the lack of foreseeability of harm to the plaintiff.

Plaintiff urges the Court to instead consider *Doe ex rel. Ortega-Piron v. Chicago Bd. of Educ.*, 213 Ill.2d 19, 289 Ill.Dec. 642, 820 N.E.2d 418 (2004), in which the court upheld a willful and wanton claim against a school district that knew of a student's prior instances of sexual abuse before that student perpetrated an attack on the plaintiff on a school bus.

The plaintiff's complaint alleges that "the violent and aggressive behavior exhibited by Defendant E.H. . . . included sexual misbehavior toward females" and that "District 77 officials had received complaints about defendant E.H.'s violent and aggressive behavior toward fellow students" (Doc. 48). The complaint avers that Ms. Drake was willful and wanton in failing to discover the danger posed by E.H. to other students and failing to prevent it. It further claims that Mr. Howes was willful and wanton by failing, "after knowledge of impending danger," to prevent it.

On the face of the pleadings, the foreseeability of the plaintiff's injury in the case at bar may well surpass that of *Mancha*, but it does not approach that of *Doe*. As the Court observed in its previous order dismissing the plaintiff's willful and wanton claims against the school districts, the plaintiff neglects to acknowledge that the complaint in *Doe* showed far more extensive knowledge of the assailant student's deviant history than the complaint at issue. In *Doe*, the plaintiff pled that the defendant knew the student "had been declared a sexually aggressive child and youth ward and was under a 'Protective Plan' requiring that he never be left unsupervised among other children." *Doe ex rel. Ortega-Piron v. Chicago Bd. Of Educ.*, 213 Ill.2d 19, 22, 289 Ill.Dec. 642, 820 N.E.2d 418, 420.

With regard to the individual defendants, plaintiff has not pled sufficient facts to support foreseeability. In fact, the complaint does not allege that Ms. Drake was aware of E.H.'s prior transgressions at all. As to Mr. Howes, the complaint contains a conclusory allegation that he had "knowledge of impending danger." The most the complaint does is to claim that District 77 officials had received

complaints about E.H., but that allegation fails to impute knowledge on Ms. Drake or Mr. Howes.

Therefore, as it stands the complaint does not adequately support the plaintiff's willful and wanton claims against Ms. Drake and Mr. Howes, absent more specific facts from which foreseeability may be inferred. The complaint simply cannot defeat the defendants' immunity granted by Illinois School Code Section 24-24 and the Tort Immunity Act; thus dismissal is appropriate.[1]

## V.   CONCLUSION

For the foregoing reasons, O'Fallon Township High School District No. 203's motion to dismiss is **GRANTED** (Doc. 50). Counts XI of plaintiff's first amended complaint is **DISMISSED without prejudice.**

Freeburg Community High School District No. 77's motion to dismiss is **GRANTED** (Doc. 55). Counts XII, and XVI of plaintiff's first amended complaint are **DISMISSED without prejudice.**

---

[1] As the facts stated in the complaint fail to establish grounds for finding willful and wanton negligence, the Court need not conduct a duty analysis. The Court notes, however, that the plaintiff has not specifically pled the statutory or common law source of the duty owed to the plaintiff. Furthermore, a "special duty" has not been sufficiently pled on the face of the complaint because, for the reasons discussed, the essential prong of "unique awareness of the particular danger" has not been established on the part of the individual defendants. *Doe v. White,* 409 Ill.App.3d at 1094, 351 Ill.Dec. 396, 951 N.E.2d at 224 (enumerating the elements of the special duty exception as: "(1) the [defendant] must be uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the [defendant's] part; (3) the specific acts must be affirmative or willful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of [the defendant]").

Benjamin Howes' motion to dismiss is **GRANTED in part** and **DENIED in part** (Doc. 56). Count X of plaintiff's first amended complaint is **DISMISSED without prejudice**, but all other claims remain.

Jessica Drake's motion to dismiss is **GRANTED** (Doc. 57). Count IX of plaintiff's first amended complaint is **DISMISSED without prejudice.**

Should plaintiff wish to proceed on her willful and wanton supervision claims and her Section 1983 claim against District 77, the Court **GRANTS** plaintiff leave to file a second amended complaint as to Counts IX, X, XI, XII, and XVI. Plaintiff shall file her second amended complaint, within fourteen (14) days of the entry of this order (on or before April 8, 2015). Failure to file an amended complaint will result in of dismissal of Counts IX, X, XI, XII, and XVI of this action with prejudice and without further notice.

**IT IS SO ORDERED.**

Signed this 25th day of March, 2015.

Digitally signed by
David R. Herndon
Date: 2015.03.25
19:52:03 -05'00'

**United States District Judge**