## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**AUBRIE SPINKA,**

**Plaintiff,**

**v.**

**E.H., a minor, JESSICA DRAKE,**
**BENJAMIN HOWES, FREEBURG**
**COMMUNITY HIGH SCHOOL DISTRICT**
**NO. 77**

**Defendants.**                                                **Case No. 14-cv-583-DRH-PMF**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I.    INTRODUCTION

Now before the Court is defendants Freeburg Community High School District No. 77 (hereinafter "District 77"), Benjamin Howes and Jessica Drake's motion for summary judgment on counts XII, XIII, XIV, and XVI of plaintiff Aubrie Spinka's second amended complaint (Docs. 102)[1], to which plaintiff timely filed a response (Doc. 106), and defendant filed a reply (Doc. 108). For the reasons set forth below, the Court **GRANTS** the motion.

### II.    BACKGROUND

On May 21, 2015, District 77 removed this case from the Circuit Court of St. Clair County, Illinois asserting this Court's original jurisdiction under 28 U.S.C.

---

[1] Defendants also sought summary judgment on counts IX, X, and XI in the motion, but the Court dismissed plaintiff's willful and wanton claims in response to defendant's motion to dismiss.

§§ 1331 in that the matter arises under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, and 42 U.S.C § 1983 (Doc. 3). Upon removal, defendants filed various motions to dismiss plaintiff's complaint for failure to state a claim. Thereafter, plaintiff sought leave to file her first amended complaint (Doc. 44). The Court granted the request, and on August 25, 2014, Spinka, then a minor and through her mother, filed a sixteen-count amended complaint (Doc. 48).

Defendants again filed motions to dismiss for failure to state a claim. The Court granted O'Fallon Township High School District No. 203's motion to dismiss, District No. 77's motion to dismiss, Jessica Drake's motion to dismiss, and granted in part Benjamin Howes' motion to dismiss (Doc. 74). Counts IX, X, XI, Counts XII, and XVI of plaintiff's first amended were dismissed with leave to amend those claims. Thereafter, Spinka filed her second amended complaint (Doc. 75).

Subsequent to the second amended complaint's filing, the Court granted defendant O'Fallon Township High School District No. 203's motion to dismiss (Doc. 77), and District 203 was dismissed with prejudice from this action (Doc. 90). The parties also stipulated to the voluntary dismissal with prejudice of defendants Stephen and Tara Hauser (Doc. 116). Thereafter, District 77, Benjamin Howes and Jessica Drake filed a motion to dismiss Counts IX, X, XI, plaintiff's willful and wanton claims, with prejudice, which the Court granted (Doc. 120).

The following allegations are taken from the second amended complaint. On April 13, 2013, Plaintiff Aubrie Spinka, a District 77 student, alleges that while attending a regional music contest with the jazz band at a District 203 school, she was sexually assaulted by fellow District 77 student, defendant E.H.. Spinka alleges that the assault occurred in the girls' bathroom of O'Fallon Township High School and E.H. was not detained or disciple immediately thereafter.

On the following Monday, April 15, 2013, Spinka and her mother, Keyona Fisher, notified District 77 by reporting the incident to Freeburg Community High School's (hereinafter "FCHS") then-Principal, Benjamin Howes. Ms. Fischer obtained a No Contact Order ("Protection Order"), prohibiting E.H. from being near Spinka. Howes contacted the District 77 superintendent regarding the incident, and informed Ms. Fischer that he could not promise that the Protection Order would in fact be enforced.

Thereafter, E.H. was removed from the band for the remainder of the 2012-2013 school year, but was permitted to remain enrolled in District 77 until he withdrew the following school year[2]. Upon the entrance of a no contact order, E.H. did not attend school, for the remainder of the 2012-13 school year. Aubrie Spinka then returned to FCHS on April 19, 2013, but was later placed on homebound instruction due to residual injuries from her attack.

At issue here are Spinka's claims against Benjamin Howes and District 77 on the basis that her treatment subsequent to the assault. Spinka alleges Title IV violations on the part of both Howes and District 77 for discrimination by

---

[2] E.H. also remained on homebound instruction for the remainder of the school year.

preventing Spinka from attending events at FCHS (Count XII) and deliberate indifference to acts of harassment (Count XIII) (Doc. 75). Spinka also alleges that Howes (Count XIV) and District 77 (Count XVI) violated her Fourteenth Amendment right to Equal Protection on the basis of gender in violation of 42 U.S.C. § 1983. Defendants argue that the record is devoid of facts to support either a Title IV or § 1983 violation and argues that no genuine issue of material fact remains as to these claims (Doc. 102). Plaintiff contends, however, that the record contains ample facts to support a genuine issue of material fact as to each of Spinka's sex discrimination claims (Doc. 106).

### III.  <u>LEGAL STANDARD</u>

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, as well as resolve all factual disputes in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372 (2007); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008).

The party seeking summary judgment bears the initial burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). In response, the non-moving party may not rest on bare pleadings alone, but instead must highlight specific material facts to show the existence of a genuine issue to be resolved at trial. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995).

## IV.  ANALYSIS

### a.  Count XII and XIII- Title IX

Title IX of the Education Amendments of 1972 provides in relevant part:

> "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

In *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), the Court addressed the circumstances under which federal funding recipients, like public schools, can be held civilly liable for damages on the basis of sex. Title IX fund recipients can be liable only for their own misconduct. *Id*. at 640–41.

The Supreme Court has set a high bar for plaintiffs seeking to hold schools

and school officials liable for student-on-student harassment. School officials are given broad latitude to resolve peer harassment and are liable only in "certain limited circumstances." *Davis*, 526 U.S. at 643, 119 S.Ct. 1661. A school district may incur Title IX liability for gender-based, peer-on-peer harassment under Title IX, if the district was deliberately indifferent to harassment that was "so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities" and that the school district had knowledge of the harassment and was deliberately indifferent to the conduct. *Id*.; *Gabrielle M. v. Park Forest–Chi. Heights, Ill. Sch. Dist.* 163, 315 F.3d 817, 821 (7th Cir.2003). The Court made clear that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." Id. at 648, 119 S.Ct. 1661.

### i.  *Actual Knowledge*

It is undisputed that the allegation of assault in question occurred on April 13, 2013, and no administrators or school officials in District 77 knew about E.H.'s abuse of Spinka until she and her mother reported it to school officials on the following Monday, April 15, 2013 (Doc. 102-38).

Spinka argues, however, that District 77 and other school officials knew or should have known about E.H.'s history and the complaints should have prompted further investigation long before Spinka's April 2013 assault. Although school administrators certainly cannot escape liability though willful blindness,

there is no evidence that any school official avoided learning of serious threats to Spinka's safety or her ability to get an education because of the harassment. The *Davis* standard is one that requires "actual knowledge" and is not satisfied by knowledge that something might be happen. Actual knowledge, on the part of school officials, comes only when the incidents are witnessed or reported. *Gabrielle M*., 315 F.3d at 823–24. In this case, there is no evidence, that District 77 or its officials knew of Spinka's assault until she and her mother reported it to school officials on April 15, 2013.

### ii. *Deliberate Indifference*

The "deliberate indifference standard" brings liability for damages only where the Title IX recipient remained deliberately indifferent to known acts of harassment. See *Davis*, 526 U.S. at 642, 119 S.Ct. 1661 (discussing *Gebser v. Lago Vista School Dist*., 524 US 274 (1998) stating liability arose from recipient's official decision not to remedy the violation). "[T]he deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Davis*, 526 U.S. at 645, 119 S.Ct. 1661.

In describing the proof necessary to satisfy that standard, the Supreme Court stated that school administrators must "continue to enjoy the flexibility they require" in disciplinary decisions unless their response to harassment is "clearly unreasonable."" *Id*. at 648-649. 119 S.Ct. 1661. A school is not required to "remedy" sexual harassment nor guarantee that students conform to certain rules, but rather, "the [school] must merely respond to known peer harassment in a

manner that is not clearly unreasonable." *Davis*, 526 U.S. at 648–649, 119 S.Ct. 1661. The Seventh Circuit echoed that sentiment in *Gabrielle M.* where they said that a "school may take into consideration administrative burdens or the disruption of other students' or their teachers' schedules in determining an appropriate response [to peer harassment]." 315 F.3d at 825.

In *Davis*, a male student fondled a female student's chest; spoke in vulgar language to her; engaged in sexually suggestive behavior toward her; told her "I want to get into bed with you" and "I want to feel your boobs"; and placed a door stop in the front of his pants and acted suggestively toward her. *Id.* at 633–636, 119 S.Ct. 1661. In addition, other girls, who the male student harassed, sought an audience with the principal, which a teacher denied. When plaintiff's mother asked the principal what disciplinary action he planned to take against the student, he responded "I guess I'll have to threaten him a little bit harder." Id. at 635, 119 S.Ct. 1661. Although both the plaintiff and her mother informed plaintiff's teacher about the incidents, the school took *none* of the following action: disciplining the student, separating plaintiff from the student, or establishing a sexual harassment policy or procedure. Id. at 634–635, 119 S.Ct. 1661. The Supreme Court stated that this lack of response could suggest "deliberate indifference on the part of the Board, which made no effort whatsoever either to investigate or to put an end to the harassment." Id. at 654, 119 S.Ct. 1661.

In this case, upon plaintiff's disclosure to school officials, nothing in the

facts indicate an unreasonable response to Spinka's allegations. In fact, Spinka and her mother immediately met with the principal and later spoke to the district superintendent regarding the incident. Under the *Davis* standard, school administrators are not required to give a particular disciplinary action under a specific set of circumstances. 528 U.S. at 648, 119 S.Ct. 1661. The standard simply does not require schools to expel every student accused of similar misconduct. *Id*. Thus, failure to expel a student is not indicative of a Title IX violation.[3]

Here, upon Spinka's disclosure to the school officials, officials responded promptly by conducting an investigation. District 77 superintendent requested video from OTHS for the date in question (Doc. 102-37). Howes and assistant principal Frerking began questioning staff and students with possible information surrounding the assault on that very day (Doc. 102-38). Ms. Drake was questioned, and students A.B. and J.S.—names that Spinka provided earlier that morning— were also questioned within four hours of Spinka's disclosure to the school (*Id*.). The alleged assailant E.H. was also questioned that day and he was removed from school.

Following the initial questioning, the O'Fallon Police Department also visited FCHS and met with Superintendent Lehman, the school resource officer, and the principals. The District believed that the police would assist with

---

[3] In this case, Illinois law would permit District 77 to expel E.H. for up to two calendar years. 105 Ill.Comp.Stat. 5/10-22.6. However, the Protective Order entered on May 6, 2013 kept E.H. 500 feet away from Spinka, and kept E.H. off-campus, by his own agreement, for two calendar years (until May 2015). (Doc. 102-29, pg. 21). The order also prohibited E.H. from attending any District 77 event attended by Spinka.

expulsion at the close of their investigation (Doc. 102-38).

On April 17, 2013, E.H. was then informed that he would, at a minimum, face removal from the band. According to Jessica Drake, E.H. was removed from the band, prohibited from participating in the band's performance at graduation, and prohibited from attending Summer Band Camp in 2013 (Doc. 102-39).

Furthermore, Spinka referenced one prior incident of potential sexual harassment involving E.H. that occurred prior to April 13, 2013 incident to which the school responded in such a way that does not exhibit a "clearly unreasonable" response.   In that incident, which occurred in September 2012, the female student reported to the school social worker, Tina Hoefft, that E.H. had made comments to her during marching band practice and she wished that they would stop. (Doc. 102-40). Specifically, the student reported that E.H. had slapped her on the butt and "he asked her to hold his trombone, saying something about holding his boner." (Id.)

Immediately upon receipt of said complaint Ms. Hoefft stated that she confronted E.H. regarding his comments and reprimanded him as to how one may construe the comments as sexual harassment and that he needed to be more aware of his interactions with other students and the way they came across. She also placed a report in E.H.'s student file regarding the incident (Doc. 102-11). This was the first incident involving E.H. prior to the assault at issue. (Id). No reports of continued harassment came from the female student following E.H.'s meeting with Ms. Hoefft. Upon reviewing the facts, depositions, and pleadings, no

facts indicate a "clearly unreasonable" response on the part of District 77 in that instance.

The deliberate indifference standard "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Davis*, 528 U.S. at 648, 119 S.Ct. 1661. This standard does not require that schools expel every student accused of misconduct. See *id*. Victims do not have a right to particular remedial demands. *id*. Furthermore, courts should not second-guess the disciplinary decisions that school administrators make, especially in hindsight. See *id*. Accordingly, the Court finds that no reasonable jury could find that District 77 responded with deliberate indifference to the reported assault.

Moreover, there is no evidence that Spinka was denied access to an education based on the evidence set forth. Although she was permitted to utilize homebound instruction, she still returned to school prior to the 504 meeting. The school made accommodations for her to finish assignments and take her AP History Exam (Doc. 97). Nothing in the record shows that she was denied any educational opportunities, or that she was not prohibited from taking exams. She even participated in the spring play (Doc. 97). The 504 plan was also in place in case Spinka chose to attend school for the remainder of that school year (Doc. 102-7). Furthermore, upon receiving her parents' request, the school district later helped to facilitate Spinka's transfer to a different school for the upcoming school year. (Doc. 102-8). All evidence indicates that the school district's response was

not clearly unreasonable or discriminatory based on gender. 315 F.3d at 825.

Accordingly, the Court finds the record contains insufficient evidence from which a jury could reasonably infer that Spinka was subjected to gender discrimination imposing Title IX liability on District 77.[4]

### b.  Count XIV- § 1983 (Howes)

The Equal Protection Clause of the Fourteenth Amendment provides that a state shall not "deny to any person within its jurisdiction equal protection of the laws." U.S. CONST. AMEND. XIV. The Supreme Court has interpreted the Equal Protection Clause to prevent arbitrary gender-based discrimination. *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (finding that "[t]o give a mandatory preference to members of either sex over members of the other, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause"). This means that state sponsored educational institutions may not discriminate based upon an alleged gender stereotype. See *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 725, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982).

In order to hold an individual liable for an equal protection violation under § 1983, a plaintiff must establish that defendant was personally involved in the deprivation of her constitutional rights. *Stringer v. Rowe*, 616 F.2d 993, 1000–

---

[4] Plaintiff alleges that she was told by a District 77 employee that she was not permitted to be on school property for certain events, such as the graduation of another class. However, neither the FCHS Homebound Instruction Program Policies, acknowledged and signed by both Spinka and her mother, nor the School Code, state anything to that effect. (Doc. 102-5).  At that point in time, Spinka had already attended prom and participated in the school play. Additionally, Spinka did not make any request to district personnel that she be allowed to attend the FCHS graduation.

1001 (7th Cir.1980). "Personal involvement" requires an overt act, or a failure to act "with a deliberate or reckless disregard of plaintiff's constitutional rights." *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir.1994). "Personal involvement" does not demand the defendant's direct participation in the deprivation of the plaintiff's constitutional rights. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir.1981). It is enough if the constitutional deprivation occurs at the defendant's direction or with his or her knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982) [citations omitted]. Therefore, a plaintiff must present evidence showing that the defendant directly and knowingly participated in a constitutional violation or that he recklessly permitted a violation to occur.

Spinka has failed to present evidence that shows that Howes both excluded her from campus, or that such action was done with discriminatory intent following the assault. Plaintiff's claim asserts that Howes, in his individual capacity, deprived Spinka of her Equal Protection rights "subjecting Spinka to burdensome processes in order to pursue her off-campus education after April 13, 2013, while allowing Defendant E.H. to pursue his education off-campus without being subjected to any process."

However, Spinka admits following her disclosure to Howes about the assault, April 13, 2013, she never saw or personally encountered E.H. on the property of FCHS for the remainder of the 2012-2013 school year. Prior to homebound instruction, evidence shows that Spinka was permitted to attend school, and did in fact attend classes (Doc. 102-2; 102-38). Both she and E.H. were to remain on

homebound instruction through FCHS through the end of the 2012-2013 school year (Doc. 97).  Furthermore, it was Spinka's mother that requested homebound instruction following the assault and Spinka's PTSD diagnosis (Doc. 102-5). Spinka also attended prom, participated in the Spring 2013 play, took the AP History Exam, and was granted exemptions or alternate dates for her final exams (Doc. 97). Spinka's allegations failed to present evidence indicating that Howes excluded her from campus, or that his actions were done with discriminatory intent following the assault.

Furthermore, Spinka needed to proffer evidence of defendant's intentional or deliberate indifference as to her equal protection claim *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir.1996) (citations omitted). Because the undisputed evidence in this case shows that Howes neither acted with a discriminatory purpose nor discriminated against Spinka, *Murrell v. School District Number 1, Denver, Colorado,* 186 F.3d 1238, 1249–51 (10th Cir. 1999) (holding that teachers, administrators, and school boards deny equal protection through deliberate indifference to peer sexual harassment), summary judgment is appropriate.

As the Court noted above in its "deliberate indifference" analysis under Title IX, the undisputed facts show that District 77 and its administrators responded to the assault against Spinka in a matter sufficient to satisfy the aforementioned standard. Thus, because the record lacks sufficient evidence from which a jury

could reasonably infer Howes' treated Spinka differently based on her gender, summary judgment as to Count XVI is approriate.

### c.  Count XVI § 1983 (District 77)

Under *Monell v. Department of Social Services of City of New York*, a school district cannot be held liable under § 1983 based upon a *respondeat superior* theory. 98 S.Ct. 2018, 2036 (1978). Instead, in order to allege that a school district violated a plaintiff's rights under Section 1983, the plaintiff must satisfy a heightened pleading standard by showing: 1) that there was an express policy that when enforced, caused a constitutional deprivation, 2) that there was a widespread practice that, although not authorized by written law or express policy, was so permanent and well settled as to constitute a custom or usage with the force of law, or 3) the plaintiff's constitutional injury was caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir.2000).

Under Section 1983, an individual's status as a final policymaker is a question of state or local law. *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir.2004). "In order to have final policymaking authority, an official must possess '[r]esponsibility for making law or setting policy,' that is, 'authority to adopt rules for the conduct of government.' " *Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir.2003) (quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir.1992)). The mere authority to implement pre-existing rules is not the authority to set

policy. *Id. at 601*; *Auriemma*, 957 F.2d at 401; *Eversole v. Steele,* 59 F.3d 710, 717 (7th Cir.1995).

Spinka's conclusory allegation that Principal Howes had final policymaking authority is unsupported by evidence, state or local law, or custom. Spinka put forth no evidence demonstrating that Principal Howes had the authority to adopt rules for District 77, as distinct from the authority to merely enforce pre-existing rules, to create a genuine issue of material fact. In her response to the summary judgment motion, Spinka alleges that "District 77 took basically no action against Defendant E.H., while they told Mrs. Fisher that Aubrie Spinka "was not to step foot on school grounds." [ ]. Mrs. Fisher testified that she believes that Defendant Howes communicated that directive to her." (Doc. 106). However, as described above, it is clear from the evidence put forth that Spinka was allowed on campus for various events. Additionally, neither Spinka nor her mother made requests to administration regarding events she wished to attend that were ever denied (Doc. 106-7, p. 118). Both she and E.H. remained on homebound instruction, except that E.H. was prohibited from extracurricular band activities, including graduation. Finally, Spinka's allegation that Howes possesses policy making authority is devoid of factual support to support her claim. No evidence suggest such authority beyond the scope of the authority to implement pre-existing rules discussed above. No evidence suggests Howes possessed the authority to set policy.

As such, nothing in the facts indicates gender based discrimination

surrounding the assault or reporting to support the allegation that District 77 acted either intentionally or with deliberate indifference. Thus, upon reviewing the facts, depositions, and pleadings, no reasonable jury could find District 77's liable for a Section 1983 violation equal protection violation.

### V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** defendant's motion for summary judgment on counts XII, XIII, XIV, and XVI of plaintiff Aubrie Spinka's second amended complaint (Docs. 102). The Clerk shall enter judgment at the close of the case. The parties shall contact magistrate Judge Frazier if a settlement conference would be beneficial as to the remaining claims against E.H.

**IT IS SO ORDERED.**

Signed this 31st day of March, 2015.

Digitally signed by Judge David R. Herndon
Date: 2016.03.31 20:23:30 -05'00'

**United States District Judge**